NEBRASKA MOLINE PLOW COMPANY, APPELLANT, V. FRED FUEHRING ET AL., APPELLEES.

FILED JUNE 7, 1900.  No. 9,269

1. **Order for Money:** EQUITABLE ASSIGNMENT. An order for the payment of money which is not immediately effective does not operate as an equitable assignment.

2. ———: RIGHTS OF GARNISHING CREDITORS. And if, before such order becomes effective, the fund against which it is directed is seized by attachment or garnishee process, the rights of the attaching or garnishing creditor are superior to those of the person holding such order.

3. **Check:** APPROPRIATION OF FUND. A check drawn upon a particular fund is an appropriation of so much of the fund as may be necessary to pay the check.

4. ——: IN FUTURO: VESTED RIGHT. A check directed against a fund to be afterwards created by depositing money in bank does not vest in the payee of the check any right to, or control over, such money until it has been so deposited.

APPEAL from the district court of Seward county. Heard below before BATES, J. *Reversed.*

*Geo. W. Lowley* and *D. C. McKillip,* for appellant.

*Biggs & Thomas* and *Norval Bros., contra.*

*D. C. McKillip,* for Pitkin & Co., appellees.

SULLIVAN, J.

This is an appeal from a judgment of the district court of Seward county. The controversy is between the Nebraska Moline Plow Company, claiming an attachment lien on a fund in the hands of Norval Bros., and the S. K. Martin Lumber Company, claiming to be the equitable assignee and owner of the same fund. The only facts essential to a clear understanding of the question decided are these: On March 9, 1894, the appellant sued Fred Fuehring to recover money due on a contract, and at the same time garnished Norval Bros., who had in their hands, as Fuehring's agents, $2,990 of Fuehring's money. On the day the action was commenced, and a short time before the process in garnishment was served, the lumber company, through its agent, W. H. De Bolt, obtained from Fuehring the check and order here set out:

"GOEHNER, NEB., March 9th, 1894.

*"Mr. B. Norval,* DEAR SIR:—Please deposit the money at the State Bank for open account.

"Yours truly,                    FRED FUEHRING.

"I give Mr. De Bolt one check for $2,000.00 and see that he get his pay."

"SEWARD, NEBRASKA, March 9th, 1894. No. ——
"The State Bank of Nebraska:

"Pay to S. K. Martin Lbr. Co. or bearer, $2,000.00 two thousand dollars.                    FRED FUEHRING."

The trial court found that the execution of these papers constituted an equitable assignment of $2,000 of the fund in the hands of Norval Bros., and accordingly gave judgment in favor of the S. K. Martin Lumber Company, it having, by intervention, become a party to the action between the plow company and Fuehring.

There is a vast amount of evidence in the record, and much discussion of it in the briefs, but we think the only question for decision arises upon the foregoing statement. If the order and check were immediately effective; if they operated at once to vest the intervener with an equitable property in $2,000 of the money in the hands of the garnishees, then, of course, that part of the fund did not belong to Fuehring, and was not subject to seizure on process against him. It is conceded that a check drawn on a particular fund is an appropriation of so much of the fund as may be necessary to pay the check. *Fonner v. Smith*, 31 Nebr., 107. But the contention of counsel for appellant is that there was, in this case, no evidence of an intention to make a transfer that would pass, irrevocably and at once, the ownership of any part of the fund then in the hands of Fuehring's agents. This view of the matter impresses us as being altogether sound. In *Christmas v. Russell*, 81 U. S., 69, 84, the court, speaking through Mr. Justice Swayne upon the subject of what constitutes a present appropriation, said: "An agreement to pay out of a particular fund, however clear in its terms, is not an equitable assignment; a covenant in the most solemn form has no greater effect. The phraseology employed is not material, provided the intent to transfer is manifested. Such an intent and its execution are indispensable. The assignor must not retain any control over the fund—any authority to collect, or any power of revocation. If he do, it is fatal to the claim of the assignee. The transfer must be of such a character that the fundholder can safely pay, and is compellable to do so, though forbidden by the assignor." It seems plain that there was in this case no appropriation of the money,

or any part of the money, in the hands of the garnishees. They were not directed to pay the intervener, but to deposit the money in the bank. The order was not irrevocable; it might have been countermanded; and, in fact, it was revoked; it was a mere direction by a principal to his agent, and, therefore, subject to recall. Suppose Norval Bros. had paid the money to the bank notwithstanding the revocation of the order; upon what ground could they have successfully defended a suit by Fuehring for conversion? The money in the custody of the agents was not designed to go immediately to the intervener; it was first to go to the credit of Fuehring in the bank; it was to reach the bank through the instrumentalities employed by Fuehring for that purpose. His command to his agents was, we think, in substance a promise by himself, and did not divest him of dominion over the fund. We think the case is within the doctrine of *Fairbanks v. Welshans*, 55 Nebr., 362, in which it is held: "An agreement of a debtor to pay his creditor's claim out of the moneys of a particular fund, but which gives the creditor no present right in or control over such fund or any part thereof, does not operate as an equitable assignment of any part of such fund to the creditor."

Another view of the matter leads to the same conclusion. The check was directed against a fund in the bank. That fund was to be created by depositing in Fuehring's "open account" the money in the hands of the garnishees. In that account there was already at least $152.36; how much more does not appear. Manifestly, then, the check was not intended to be an assignment of a part of the fund held by Norval Bros., but the assignment of a different fund—a fund to be created by commingling the money in the bank at the time the check was issued with the money to be afterwards deposited in pursuance of the order. On the undisputed evidence we are of opinion that the intervener has failed to establish its title. The judgment is reversed, and the cause remanded for further proceedings.

                              REVERSED AND REMANDED.