## STEWART v. HEYWOOD et al.

No. 4021.   Decided November 23, 1923.   (220 Pac. 717.)

1.  ASSIGNMENTS—MISTAKE IN LISTING INDEBTEDNESS IN SCHEDULE AND GIVING CHECK FOR AMOUNT IMMATERIAL ON ISSUE AS TO ASSIGNMENT OF FUND TO CREDITORS. That bankrupts mistakenly listed an indebtedness in their schedule, and that debtor gave his check for the amount thereof to the trustee, did not prejudice rights of the bankrupts' creditors under an assignment of the fund to them, and hence is immaterial on the issue whether the fund was assigned.

2.  ASSIGNMENTS—ORDER DRAWN ON DEBTOR FOR PART OF FUND IN HIS HANDS OPERATES AS EQUITABLE ASSIGNMENT IN ABSENCE OF OBJECTION. The rule that an order drawn on a debtor for part of the funds in his hands if unaccepted by him will not operate as an equitable assignment thereof as against him is inapplicable where drawee does not object to payment of the fund but pays the fund into court for distribution among them.

3.  ASSIGNMENTS—ASSIGNMENT OF PART OF FUND IN DEBTOR'S HANDS IN PAYMENT OF CLAIM SUPPORTED BY CONSIDERATION. An assignment by a creditor of such part of a fund in a debtor's possession as was necessary to pay assignee's claim against the assignor, which authorized the debtor to charge the amounts paid to the assignor's account, held supported by a valuable consideration.

4.  ASSIGNMENTS—ORDER AUTHORIZING DEBTOR TO TAKE UP CHECKS ISSUED BY CREDITOR TO OTHERS HELD EQUITABLE ASSIGNMENT. A creditor's order authorizing the debtor to take up checks issued by the former to others and apply the amount on the debtor's

account *held* an equitable assignment of the fund for payment of sums due payees of checks.[1]

5. APPEAL AND ERROR—CAUSE REMANDED ON REVERSAL WITH DIRECTIONS TO ENTER FINDINGS, CONCLUSIONS, AND JUDGMENT IN ABSENCE OF FACT QUESTIONS. Where there was no question of fact for the jury, the cause on reversal of the judgment will be remanded, with directions to prepare and enter findings of facts, conclusions of law, and judgment for appellant.

Appeal from District Court, Second District, Weber County; *Geo. S. Barker,* Judge.

Action by M. Stewart, as Trustee in Bankruptcy, against A. R. Heywood, in which the Utah & Oregon Lumber Company and others were made parties. Judgment for plaintiff, and the Lumber Company appeals.

REVERSED AND REMANDED, with directions.

*Pratt & Pratt,* of Ogden, for appellant.

*Jos. E. Evans,* of Ogden, for respondent.

––––––––––

[1] *Insurance Co.* v. *Railroad Co.,* 44 Utah, 26, 137 Pac. 653.

THURMAN, J.

This action was originally commenced by plaintiff as trustee in bankruptcy against the defendant Heywood alone to recover a balance of $638 due upon an open account for labor and material furnished for repair and improvement of a building owned by Heywood and occupied by his lessees in Ogden City, Utah.

The labor had been performed and material furnished by the Ogden Mason Builders, a corporation, afterwards declared a bankrupt, and certain laborers and materialmen, to wit, Conrad J. Hansen, Mennoch Paint & Glass Company, and the Utah & Oregon Lumber Company, a corporation.

The defendant Heywood, answering the complaint, admitted that he was owing upon the work the said sum of $638,

and alleged that he had retained and withheld that amount from the contractor, Ogden Mason Builders, for the purpose of protecting himself against threatened liens upon the building. He also alleged that on or about the 21st day of September, 1920, said contractor, Ogden Mason Builders, authorized him in writing to take up and pay certain checks which had been issued by said contractor for labor and material furnished upon the building, to wit, to Utah & Oregon Lumber Company $350, to Conrad J. Hansen $120, and to Mennoch Glass & Paint Company $159.88. It is further alleged in Heywood's answer that the above-named persons and corporations have at all times claimed said amounts and have threatened suits against him for the recovery thereof. Finally, defendant alleges he has at all times been ready, able, and willing to pay said sum of $638 and therefore pays the same into court disclaiming any interest therein except proper acquittals and receipts for the same.

Other matters are alleged in the answer not necessary to enumerate in this connection. Defendant prays for an order directing payment of the amount deposited in court to the proper persons, that proper receipts be given therefor, and that the aforesaid persons claiming said amounts be required to interplead and be made parties to the action. An order was made accordingly.

Thereafter the Utah & Oregon Lumber Company, on its own behalf and on behalf of the said Conrad J. Hansen and Mennoch Paint & Glass Company, as assignors, appeared and filed its answer and cross-complaint in said cause. The cross-complaint is stated in three causes of action; the first on behalf of cross-complainant in its own right and the others in behalf of its assignors. The causes of action are substantially in the same form, except as to the work done, the material furnished, the amount due, and the persons performing the work or furnishing the material. The following facts are in substance alleged: (1) The bankruptcy of the Ogden Mason Builders, and that plaintiff is trustee; (2) that defendant Heywood owned the building in question; (3) the corporate capacity of cross-complainant and its assignor, Mennoch Glass & Paint Company; (4) the contracts for repairs between Hey-

wood and his lessees and the Ogden Mason Builders; (5) the completion of the contract on or about September 1, 1920; (6) the amounts due thereon to cross-complainant and its assignors as hereinbefore stated. It is then alleged in substance that on the 16th day of September, 1920, the Ogden Mason Builders made and delivered to cross-complainant and its assignors checks for the several amounts due as above set forth; that said checks were presented to the Ogden State Bank, upon which they were drawn, and payment thereof refused; that in consideration of their waiver of the right to file liens upon said building and the release of said Heywood from all liability to pay said amounts, the said Ogden Mason Builders, on the 21st day of September, 1920, assigned, set over, and transferred to cross-complainant and its said assignors the amount of money retained and withheld by said Heywood out of the money which had become due the said Ogden Mason Builders and directed said Heywood to pay the same to cross-complainant and its said assignors; that said Heywood then and there agreed to do so in consideration of the aforesaid release; that the said sum of money so withheld by Heywood and agreed by him to be paid cross-complainant and its said assignors is part of the sum paid by him into this court for distribution among the parties entitled thereto.

Cross-complainant prays judgment for said amounts, aggregating the sum of $629.88 and interest thereon, and that cross-complainant be adjudged entitled to the money on deposit. The material allegations of the cross-complaint are denied by the plaintiff.

The trial court found there was no assignment of the money in question to the cross-complainant or its assignors and thereupon entered judgment for the plaintiff trustee as prayed for in her complaint.

Cross-complainant appeals.

No question of controlling importance under the Bankrupt cy Act is involved. The sole question is: Was there an assignment of the fund in question to the cross-complainant and its assignors?

In addition to the unchallenged facts that the amount of the indebtedness is not in dispute; that the same is due and

owing to cross-complainant and its assignors; that Heywood was ready, willing, and able to pay; that the parties had executed to him a release of all his liability to them on the assumption that the debt would be paid—appellant relies specially upon a certain order directed to Heywood by the Ogden Mason Builders, September 21, 1920, as follows:

"Dear Sir:    You are hereby authorized to take up the following checks issued by the Ogden Mason Builders and return to Ogden Mason Builders, when received, the said checks. The amount is to apply on your account with us:   Utah & Oregon Lumber Co. $350.00, Conrad J. Hansen $120.00, Mennoch Paint & Glass Co. $159.88."

Appellant earnestly insists that this document, taken in connection with the other circumstances enumerated, constituted an assignment of the fund, or at least of so much thereof as was necessary to satisfy the claims of cross-complainant and its assignors.

In support of its contention appellant relies on 2 R. C. L. 614 and notes 3 and 4; same volume, page 615; *Fairbanks* v. *Sargent*, 117 N. Y. 320, 22 N. E. 1039, 6 L. R. A. 475; *Canterbury* v. *Marengo Abstract Co.*, 166 Ala. 231, 52 South. 388, 139 Am. St. Rep. 30.

As against the contention of respondent, that the alleged assignment purports to assign only a part of the fund, appellant cites *Burditt* v. *Porter*, 63 Vt. 296, 21 Atl. 955, 25 Am. St. Rep. 763; *Insurance Co.* v. *Railroad Co.*, 44 Utah, 26, 137 Pac. 653; and 2 R. C. L. 619, note 6, and cases.

These authorities lend support to appellant's contention.

Respondent, however, insists there was no relinquishment of control by Ogden Mason Builders over the indebtedness, and that any retention of control is fatal to the claim of the assignee; that "the essential requisite of an assignment is that the assignor should presently strip himself of his interest in the fund or in some part thereof," citing *Weaver* v. *Atlantic Roofing Co.*, 57 N. J. Eq. 547, 40 Atl. 858; *Nebraska Plow Co.* v. *Fuehring*, 60 Neb. 316, 83 N. W. 69; *In re Wood's Estate*, 243 Pa. 211, 89 Atl. 975.

Under the foregoing cases respondent contends that the transfer of the obligation must be such that the holder of the fund can safely pay and may be compelled to do so by the as-

signee though forbidden by the assignor. This proposition will receive attention later on.

It is next contended by respondent that none of the parties concerned considered the order as an assignment of the fund; that the Ogden Mason Builders did not so consider it, as they afterwards listed the indebtedness in their bankruptcy schedule; and that Heywood did not so consider it, as he afterwards gave his check for the amount of the indebtedness to the trustee in bankruptcy. If, in the light of the circumstances involved in the entire transaction, the order of September 21, 1920, amounts to an assignment, the circumstances just enumerated are without significance. If the Ogden Mason Builders made a mistake in listing an indebtedness in its bankruptcy schedule, it is difficult to see why cross-complainant should be prejudiced thereby. If Heywood made a mistake in issuing his check to the trustee on the assumption that the trustee was entitled to the money, it is equally difficult to understand why the cross-complainant should be prejudiced. As regards the check issued by Heywood to the trustee, it may as well be stated in this connection that he immediately thereafter stopped payment of the check for the very reason that appellant and its assignors were claiming an interest in the fund.

Again, it is insisted by respondent that if Heywood accepted the order as an assignment, he accepted it upon condition that the checks be delivered to him, and that they were never delivered; that therefore there was no assignment. Upon this point respondent cites *Thayer* v. *Havener,* 6 Me. (6 Greenl.) 212; *Gill* v. *Weller,* 52 Md. 8; *Rosenstock* v. *Ortwine,* 46 Md. 388.

The next point urged by respondent is that the indebtedness of Heywood to the Ogden Mason Builders amounted to $638, whereas the aggregate indebtedness to appellant and its assignors was only $629.88. It is contended by respondent that—

"By the great weight of authority an order drawn on a debtor for a part of a fund in his hands and unaccepted by him will not operate as an equitable assignment of a part of the fund *as against*

*the drawee* even though drawn on a particular fund specified."
(Italics supplied.)

There can be no controversy concerning this doctrine, but it has no application in this proceeding. The drawee, Heywood, is making no contention against appellant and its assignors. He is not objecting to the payment of their accounts even though they do not in the aggregate amount to the fund paid by him into court. Indeed, he paid it into court for the very purpose of having it distributed among those entitled thereto as the court might determine.

For the reasons stated it is not necessary to refer to the numerous authorities cited by respondent on the last point mentioned.

Finally, respondent insists there was no consideration for the assignment. Just what the basis of this contention is does not clearly appear in the brief. There is no dispute as to the amount of the indebtedness. Heywood owed the Ogden Mason Builders $638. The Ogden Mason Builders owed appellant and its assignors certain amounts aggregating $629.88. The order of September 21, 1920, executed by the Ogden Mason Builders, authorized Heywood to take up certain checks which it had issued to appellant and its assignors and charge the same to its account. If these circumstances and conditions did not constitute a valuable consideration for an assignment of such portion of the fund as was necessary to pay the accounts referred to in the order, we are at a loss to know what constitutes a valuable consideration.

By the payment of the checks, Heywood would have canceled that much of the remaining indebtedness to Ogden Mason Builders, and at the same time the indebtedness of Ogden Mason Builders to appellant and its assignors would have been discharged. This is too elementary to justify extended discussion.

Now, briefly, as to the law of the case.

In addition to authorities cited by respondent, we refer to 1 Freeman on Executions (3d Ed.) at page 359, wherein the author says:

"It is not essential that the assignment should be perfect at law. It is sufficient if it is a good equitable assignment; and it is a good

equitable assignment whenever, by its terms, the person to whom an obligation is due authorizes the payment thereof to another, either for his own use, or for that of some other person, or authorizes any one to receive or hold moneys and to apply them to any specific purpose other than for the use or benefit of the assignor."

Again, on page 860, the same author says:

"An equitable assignment may be made by parol, or by mere agreement between the debtor and creditor that the debt shall be paid to some third person.

"No doubt, an order made by the creditor, directing the debtor to pay the debt to some third person, is, after its acceptance, a good and sufficient assignment of the amount therein directed to be paid. And, though this has sometimes been doubted, the majority of the authorities show that its acceptance is not essential to enable such an order to withdraw funds from the reach of the creditors of the drawer."

To the same effect is 2 R. C. L. at page 615, cited by appellant, in which it is said:

"The true test of an equitable assignment is whether the debtor would be justified in paying the debt to the person claiming to be assignee."

This test applied to the instant case would clearly show an equitable assignment.

In *Merchants' & Miners' Nat. Bank* v. *Barnes,* 18 Mont. 335, 45 Pac. 218, 47 L. R. A. 737, 56 Am. St. Rep. 586, the first paragraph of the syllabus reflects the opinion of the court:

"Where one to whom money is to become due upon the performance of a contract gives a creditor an order on the debtor for the money, to be paid when due, this is an equitable assignment of property to be acquired in the future, creating in the creditor an interest in the fund which equity will enforce, though the debtor did not accept the order or assent to the transfer."

See, also, *Canterbury & Gilder* v. *Marengo Abstract Co.,* 139 Am. St. Rep. supra, where the doctrine is succinctly stated in the second headnote:

"An assignment is a good equitable assignment whenever, by its terms, the person to whom the obligation is due authorizes the payment thereof to another, either for his own use or for that of some other person, or authorizes any one to receive or hold the moneys and to apply them to any specific purpose other than for the use and benefit of the assignor."

See further, as supporting the rule, *Southern Mut. Life Ass'n* v. *Durbin,* 132 Ga. 495, 64 S. E. 264, 131 Am. St. Rep. 210; *Metcalf* v. *Kincaid,* 87 Iowa, 443, 54 N. W. 867, 43 Am. St. Rep. 391; *Dawson* v. *Railroad Co.,* 97 Mich. 33, 56 N. W. 106; *Wood* v. *Casserleigh,* 30 Colo. 287, 71 Pac. 360, 97 Am. St. Rep. 138.

In the last case cited it is said (30 Colo. 294, 71 Pac. 362, 97 Am. St. Rep. at page 142):

"An intention to assign on the one side, and an assent to receive on the other, operate as an equitable assignment of the subject-matter, if sustained by a sufficient consideration; the form of words is not controlling."

The doctrine of the authorities above cited, when applied to the undisputed facts of the instant case, in one form or another demonstrates conclusively that there was an        4
equitable assignment of the fund in question for the payment of the sums due the appellant and its assignors.

To briefly summarize in conclusion, the undisputed facts are that Heywood owed the Ogden Mason Builders $638 and the Ogden Mason Builders owed appellant and its assignors divers sums aggregating $629.88; that a few days prior to September 21, 1920, the Ogden Mason Builders, in payment of said indebtedness, issued to appellant and its assignors respectively certain checks on a bank in Ogden, payment of which was thereafter refused; that on the date last mentioned the Ogden Mason Builders wrote a letter to Heywood authorizing him to "take up" said checks, payment of which had been refused by the bank, and return the same to the Ogden Mason Builders; that said letter was presented to Heywood, who agreed to pay said checks whenever they were all presented for payment; that the checks were not all presented to Heywood for payment as requested by him, and in the meantime the Ogden Mason Builders was declared a bankrupt and plaintiff appointed trustee; that said amounts due appellant and its assignors were listed in the schedule of indebtedness; that demand was made by the trustee upon Haywood for the sum of $638, alleged to be the balance due upon his contract with the bankrupt, and he issued his check in payment thereof; that upon request of attorneys representing appellant and

its assignors Heywood stopped payment of the check; that Heywood has at all times retained and withheld from the Ogden Mason Builders money for the purpose of paying the amounts due appellant and its assignors, and when brought into court by this action he paid into court the said sum of $638 and procured an order of court making appellant and its assignors parties in order that their rights as against that of the plaintiff might be judicially determined.

There are several sidelights in the case of more or less significance, but they are not of controlling importance. For instance: Upon Heywood's promise to pay the amounts due appellant and its assignors, they executed a release, releasing him from all liability as to said indebtedness. There is evidence also tending to show that Heywood was especially desirous that liens should not be filed upon the building and that the release was procured upon his promise to pay, for the purpose of avoiding said liens.

The court is of opinion that not only does the transaction upon which appellant relies constitute an equitable assignment of so much of the fund in question as is necessary to pay the amounts due appellant and its assignors, but that it would, in the highest sense, be inequitable and unjust to deny their right to the fund in question.

As there appears to be no question of fact to be determined by a jury, it is ordered by the court that the judgment be reversed and the cause remanded, with directions to the trial court to prepare and enter findings of fact, conclusions of law, and judgment in favor of appellant. Costs to be taxed against respondent.

WEBER, C. J., and GIDEON, CHERRY, and FRICK, JJ., concur.